**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PHOENIX LICENSING, L.L.C. ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 2:13-CV-1081 |
| v. | § | LEAD CASE |
| | § | |
| AAA LIFE INSURANCE COMPANY | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On June 4, 2015, the Court held a second hearing to determine the proper construction of the disputed claim terms in United States Patent Nos. 5,987,434 ("the '434 Patent"); 6,999,938 ("the '938 Patent"); 7,856,375 ("the '375 Patent"); 7,860,744 ("the '744 Patent"); 7,890,366 ("the '366 Patent"); 8,234,184 ("the '184 Patent"); 8,352,317 ("the '317 Patent"); 8,606,632 ("the '632 Patent"); 8,719,114 ("the '114 Patent"); and 8,738,435 ("the '435 Patent") (collectively, the "Asserted Patents"). After considering the arguments made by the parties at the hearing and in the parties' supplemental claim construction briefing (Dkt. Nos. 458 & 465), the Court issues this Supplemental Claim Construction Memorandum and Order.

# TABLE OF CONTENTS

MEMORANDUM OPINION AND ORDER ................................................................................. 1

I.     PROCEDURAL BACKGROUND .................................................................................. 3

II.    APPLICABLE LAW ...................................................................................................... 4

       **A.    Claim Construction** ............................................................................................ 4

       **B.    Construction Indefiniteness** ............................................................................... 6

III.   CONSTRUCTION OF DISPUTED TERMS .................................................................. 6

       1.   "appropriate" ................................................................................................... 7

       2.   "suitable" ......................................................................................................... 13

       3.   "distinct choices" and "distinct choice selected" ........................................... 19

       4.   "nonpurchase request" .................................................................................... 23

       5.   "variable data," "variable content data," "personalized content," "customized specific content," "customized section," "information relating to an offering for one or more financial products or services," "plan information" ........................ 28

IV.    CONCLUSION ............................................................................................................... 35

# I.    PROCEDURAL BACKGROUND[1]

Before the April 10, 2015 Claim Construction Hearing, the Court ordered the parties to file a Notice of Election of Claim Terms to be Construed ("Notice") by no later than February 16, 2015. (Dkt. No. 347 at 2.) The Court ordered each party's Notice to include no more than ten (10) disputed claim terms. (*Id.* at 2.) The order further stated that for any remaining claim term(s) a party believed required construction, the party was to file a Materiality Statement setting forth an explanation of the material claim construction disputes that exist beyond those terms provided within its Notice. (*Id.* at 2.) On April 10, 2015, the Court held a hearing to determine the proper construction of the disputed terms identified in the parties' Notice. The Court issued an order construing the disputed terms in the parties' Notice on April 20, 2015. (Dkt. No. 444.)

To address the remaining terms identified in the parties' Materiality Statement, the Court ordered the parties to file a Notice of Additional Terms to be Construed by May 1, 2015. (Dkt. No. 403 at 2.) The terms were to be selected from among those terms identified in the parties' previously-filed Materiality Statements. (*Id.* at 2.) The Court further ordered Defendants, collectively, to file a Supplemental Claim Construction Brief on terms selected among the terms identified in the parties' Notices of Additional Terms to be Construed by May 8, 2015. (*Id.*) The Court also ordered Plaintiffs, collectively, to file a Responsive Supplemental Claim Construction Brief by May 15, 2015. (*Id.*) The order further set a Claim Construction Hearing on the supplemental briefing for June 4, 2015. (*Id.*) The following construes the terms included in the supplemental briefing.

---

[1] The Court provided a background on the Asserted Patents and related technology in the April 20, 2015 Claim Construction Order and will not repeat it here. (*See* Dkt. No. 444 at 3–9).

## II.    APPLICABLE LAW

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or

may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

### B.  Construction Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112 ¶ 2. Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368 (Fed. Cir.2014). The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). Specifically, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

### III.    CONSTRUCTION OF DISPUTED TERMS

The parties' supplemental briefing focuses on the meaning and scope of twelve terms/phrases in the Asserted Patents.

### 1. "appropriate"

| Disputed Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "appropriate" | Plain meaning; no construction necessary | indefinite |

### a) The Parties' Positions

The parties dispute whether the term "appropriate" is indefinite under Section 112, ¶ 2. Defendants contend that the term "appropriate" is a purely subjective word of degree, and that the '434 Patent, the '317 Patent, and '632 Patent do not provide any "objective boundaries" against which a potentially infringing process can be compared. (Dkt. No. 458 at 6) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014)). Defendants argue that nothing in the intrinsic record offers any objective way to distinguish between "appropriate" and "inappropriate" products/product-related information/plan features. (*Id.* at 7.) According to Defendants, the claim term is "highly subjective" and depends on "unpredictable vagaries of any one person's opinion the judgment of a particular user." (*Id.*) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)).

Defendants further contend that the language of the claims of the '434, '317, and '632 Patents do not suggest any meaningful standard for "appropriate" and, thus, fail to guide any determination of its scope. (*Id.*) Defendants argue that the claims merely state that "appropriate" products, product-related information, and plan features are selected, without providing any criteria for appropriateness. (*Id.*) Defendants agree that the surrounding claim language does provide guidance as to how the selection is done, but argue that it cannot be the case that selected financial products are "appropriate" as long as they are selected "using the client information, the financial product information, and the decision criteria." (*Id.*) According to Defendants, such a result would render the word "appropriate" superfluous as the claim would have an identical meaning without it included. (*Id.*) Defendants contend that for the word to have

any meaning within the claim, there must be products selected "using the client information, the financial product information, and the decision criteria" that are appropriate, and others that are not appropriate. (*Id.* at 8.)

Defendants further argue that the specifications of the '434, '317, and '632 Patent fail to provide any objective standard for determining the scope of what is "appropriate" in the context of the claims. (*Id.*) Defendants contend that the use of the term "appropriate" in the respective specifications is sparse and ambiguous. (*Id.* at 8–9) (citing '434 Patent at 4:6–7, 12:23–25; '632 Patent at 1:43–47, 4:22–33; '317 Patent at 4:33–35, 4:53–55). According to Defendants, the specification does not provide an objective standard to determine the bounds of "appropriate" in the claims. (*Id.* at 9.)

Defendants also argue that the prosecution histories of the '434, '317, and '632 Patents fail to provide any help. (*Id.*) Defendants contend that "appropriate" was not included in the originally-filed claims of the '434 Patent, and was added with a preliminary amendment. (*Id.*) Defendants argue that this confirms the importance of "appropriate," but offers nothing in the way of objective criteria. (*Id.*) Defendants also contend that the reexamination history of the '434 Patent also fails to provide any objective guidance. (*Id.* at 10) (citing (Dkt. No. 458-4 at 10) (Remarks from the February 21, 2006 Amendment and Response to the Office Action in the first reexamination proceedings)), (Dkt. No. 458-5 at 32) (Remarks from the August 18, 2008 Response to Office Action in the second reexamination proceedings)). Defendants contend that the patentee repeatedly highlighted the importance of the "appropriate" limitation, but provided no objective standard to distinguish products that are appropriate for a given client from those that are not appropriate. (*Id.*) Defendants also argue that the prosecution histories for the '317 and '632 Patents fail to provide objective guidance regarding the scope of the term. (*Id.*)

According to Defendants, a person of ordinary skill in the art cannot possibly determine the metes and bounds of the claims because the intrinsic evidence does not provide any objective standard for discerning which products are "appropriate" for a given client and which are inappropriate. (*Id.* at 11.)

Plaintiffs respond that the claims use the term "appropriate" in a clear manner consistent with their plain and ordinary meaning. (Dkt. No. 465 at 6.) Plaintiffs further argue that the intrinsic record confirms that these terms are used in a clear manner, according to their plain and ordinary meaning. (*Id.* at 7) (citing '938 Patent at 6:53–55, 14:57–62). Plaintiffs argue that the clear claim language and consistent use in the intrinsic record reveals that these terms are not used in the claims as subjective, words of degree. (*Id.*) Plaintiffs contend that nothing in the actual claim language requires that the selected information, product, or form of output be more appropriate than something else. (*Id.*) Plaintiffs further argue that none of the claims require that a selected product be most appropriate, not as appropriate, or least appropriate. (*Id.* at 7–8.) Plaintiffs contend that the claim language makes clear when something is "appropriate," such as when a product is selected "using the client information, the financial products information, and the decision criteria . . . ." (*Id.* at 8) (quoting '434 Patent at 20:51–55 (claim 1)). Plaintiffs further contend that the specifications confirms that ordinary use; disclosing that the information or product selected is "appropriate" because it is selected using decision criteria. (*Id.*) (citing '938 Patent at 6:53–55; '434 Patent at 9:50–57).

Finally, Plaintiffs argue that other courts construing these exact terms have found them not indefinite. (*Id.*) (citing *Mobile Telecommc'ns Techs., LLC v. Blackberry Corp.*, Case No. 3:12-cv-01652-M (N.D. Tex. May 8, 2015), *CSB-System Int'l v. Sap Am., Inc.*, 2011 U.S. Dist. LEXIS 83462, *62 (E.D. Pa. July 27, 2011), *Level 3 Communs., LLC v. Limelight Networks,*

*Inc.*, 589 F. Supp. 2d 664, 682 (E.D. Va. 2008)). According to Plaintiffs, Defendants' theory ignores the actual claim language and intrinsic record, and has been uniformly rejected by this Court and others. (*Id.* at 9).

For the following reasons, the Court finds that the term **"appropriate"** is not indefinite.

### b) Analysis

The term "appropriate" appears in asserted claims 1, 2, 14, 21, 22, 41, 47–49, 68, 95, and 121 of the '434 Patent; asserted claims 1, 25, and 52 of the '317 Patent; and asserted claims 1 and 17 of the '632 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the claim language, "viewed in light of the specification . . . , inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129. For example, claim 1 of the '434 Patent recites "using the client information, the financial products information, and the decision criteria to select a subset of the financial products . . . appropriate for that client." Claims 2, 14, 21, 22, 41, 47, 48, and 49 include similar language. Likewise, asserted claims 1, 25, and 52 of the '317 patent claim each recite "decision criteria specifying how to select appropriate product-related information based on a characteristic in the personal data . . . ." Similarly, asserted claims 1 and 17 of the '632 patent claim recite "decision criteria specifying how to incorporate appropriate plan features within the plan information based at least in part on personal data related to the persons of the set of persons." As the claim language indicates, the "appropriate" product, "appropriate" product-related information, or "appropriate" plan features are those that are selected or incorporated based on the decision criteria used in conjunction with the product information/plan information/product data and the client information/personal data.

The specification further informs those skilled in the art about the scope of the term "appropriate" with reasonable certainty. For example, the specification of the '938 Patent states that variable information is "selected using the decision information so that it is appropriate for, and to a certain extent individualized for, a particular client." '938 Patent at 6:53–55. The '938 specification provides an example in which, "depending upon the age, marital status, etc., of the respective clients, several different versions of text may be used as variable information," and further explains that the text ultimately used is "appropriate for that client" because it was selected based on the client's characteristics (e.g., age, marital status, etc.). *Id.* at 14:57–62.

The '434 Patent includes a similar example "involving the logic associated with the marketing of life insurance." '434 Patent at 9:52–14:6. The specification states that "[f]actors which may be considered by the module in this selection process may include the client demographic information (e.g. age, gender, tobacco usage, and occupation), mortgage information, financial information such as income, marital information, existing policy information, family-related information, and other factors selected by the system user and incorporated into the Virtual Agent™ module decision making criteria." *Id.* at 12:12–19. Likewise, the '632 Patent provides an example that illustrate the types of decision making procedures and criteria which may be embodied for individual mortgage life insurance. '632 Patent at 10:24–14:8, 2:18–35.

Finally, as another example, the '434 Patent, '632 Patent, and '317 Patent include Figure 7, which is a flow chart illustrating steps for selecting financial products appropriate for a client in an exemplary embodiment. *See, e.g.*, '434 Patent at Figure 7. The '434 Patent states that "[t]he decision making criteria and processing undertaken for records qualifying under scenario #2 is depicted in FIG. 7." *Id.* at 11:47–49. The specification describes that the first decision is based

on mortgage loan amount and the second decision is based age. *Id.* at 11:55–65. Given these numerous exemplary embodiments, the Court finds that the claims, viewed in light of the specification, inform those skilled in the art about the scope of the invention with reasonable certainty. Accordingly, Defendants have failed to meet their burden and prove that the term is indefinite.

Defendants concede that the surrounding claim language does provide guidance as to how the selection is done. (Dkt. No. 458 at 7.) But, according to Defendants, it cannot be the case that selected financial products are "appropriate" as long as they are selected "using the client information, the financial product information, and the decision criteria." (*Id.*) The Court disagrees. Defendants ask the Court to ignore the use of the term "appropriate" in the context of the intrinsic evidence, and instead interpret it in a vacuum as a word of degree. *Energizer Holdings v. ITC*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ("Claim definiteness is analyzed 'not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.'") (quoting *In re Moore*, 58 C.C.P.A. 1042, 439 F.2d 1232, 1235 (CCPA 1971)).

As Plaintiffs argue, nothing in the actual claim language requires that the selected information, product, or form of output be more appropriate than something else. Likewise, none of the claims require a selected product to be most appropriate, not as appropriate, or least appropriate. Indeed, the specification provides examples where more than one product is determined to be appropriate. *See, e.g.*, '434 Patent at 12:38–48 ("In this illustrative example, two methodologies may be employed for selecting the product, i.e., a product and/or product provider-specific methodology and a 'best policy' analysis methodology. Both of these methodologies taken to account the information from Steps D, E, and F.").

The claim language makes clear that a product is "appropriate" when it is selected "using the client information, the financial products information, and the decision criteria . . . ." '434 Patent at Claim 1. The specifications confirm the ordinary use by disclosing that the information or product selected is "appropriate" because, for example, it is selected using decision criteria. *See, e.g.*, '938 Patent at 6:53–55 ("selected using the decision information so that it is appropriate for . . . a particular client"). Thus, as explicitly recited in the claims, one can objectively establish that a product information/plan information/product data is "appropriate" because it has been selected/incorporated based on the client information and decision criteria. The claims do not require establishing a particular criteria as a hurdle for determining what product information/plan information/product data is "appropriate." *Intermec Techs. Corp. v. Palm Inc.*, 811 F. Supp. 2d 973, 996 (D. Del. 2011) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citing *In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir. 1983)). Accordingly, the Court finds that the claims, viewed in light of the specification, inform those skilled in the art about the scope of the invention with reasonable certainty.

### c) Court's Construction

In light of the intrinsic evidence, the Court finds that the term **"appropriate"** is not indefinite.

## 2. "suitable"

| Disputed Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "suitable" | Plain meaning; no construction necessary | indefinite |

### a) The Parties' Positions

The parties dispute whether the term "suitable" is indefinite under Section 112, ¶ 2.

Defendants contend that the term "suitable" is a purely subjective word of degree, and that the '938 Patent does not provide any "objective boundaries" against which a potentially infringing process can be compared. (Dkt. No. 458 at 11) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014)). Defendants argue that nothing in the claim language and the specification offers any way to distinguish between "suitable" consumer entities selected for receiving a particular type of financial product or service offering and presumably not "suitable" consumer entities. (*Id.*) According to Defendants, the claim term is "highly subjective" and depends on "unpredictable vagaries of any one person's opinion the judgment of a particular user." (*Id.* at 11-12) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)).

Defendants contend that the language of the claims of the '938 Patent does not suggest any meaningful standard for "suitable" and, thus, fails to guide any determination of its scope. (*Id.* at 12.) Defendants argue that the claims merely state that "suitable" consumer entities are selected, without providing any criteria for suitability. (*Id.*) Defendants also argue that the surrounding claim language fails to provide any clarification. (*Id.*) Defendants contend that an argument that any selection otherwise meeting the claim limitations is "suitable," such an interpretation would improperly read "suitable" out of the claims. (*Id.*)

Defendants further argue that the specification of the '938 Patent fails to provide any objective standard for determining the scope of what is "suitable" in the context of the claims. (*Id.*) Defendants contend that the use of the term "suitable" in the specification is sparse and ambiguous. (*Id.*) Defendants argue that the term appears only twice in the claims and is never used in the specification in any way even tangentially related to selecting consumer entities. (*Id.*) According to Defendants, the specification does not provide an objective standard that one of

ordinary skill in the art could use to determine the bounds of "suitable" in the claims. (*Id.* at 12-13.)

Defendants also argue that the prosecution histories of the '938 Patent fail to provide any help. (*Id.* at 13.) Defendants contend that the only use of the term comes in the applicant stating that in providing customized financial products and services, "there are any number of factors to consider, such as the needs of the consumer, the suitability of a financial product or service for a given customer, . . . ." (*Id.*) (citing (Dkt. No. 458-6 at 3) (June 6, 2003 Response to Office Action in the '938 Patent file history)). Defendants argue that this does not relate to the term at issue, which relates to identification of a suitable consumer entity for a product, not a suitable product for a consumer. (*Id.*) According to Defendants, a person of ordinary skill in the art cannot possibly determine the metes and bounds of the claims because the intrinsic evidence does not provide any objective standard for discerning which consumer entities are "suitable" for a particular type of financial product or service offering and which are inappropriate. (*Id.* at 13–14.)

Plaintiffs respond that the claims use the term "suitable" in a clear manner consistent with their plain and ordinary meaning. (Dkt. No. 465 at 6–7) (citing '434 Patent at 9:50–57, 14:48–57; '632 Patent at 9:60–65). Plaintiffs contend that the clear claim language and consistent use in the intrinsic record reveals that these terms are not used in the claims as subjective, words of degree. (*Id.*) Plaintiffs further contend that nothing in the actual claim language requires that the selected information, product, or form of output be more or less suitable than something else. (*Id.*) Plaintiffs argue that the claim language makes clear when something is "suitable," such as when a product is selected "using the client information, the financial products information, and the decision criteria . . . ." (*Id.* at 8) (quoting '434 Patent at 20:51–55 (claim 1)). Plaintiffs further

contend that the specifications confirm that ordinary use, disclosing that the information or product selected is "suitable," because it is selected using decision criteria. (*Id.*) (citing '938 Patent at 6:53–55; '434 Patent at 9:50–57).

Finally, Plaintiffs note that the Court has held that "suitable" was "not indefinite and require[d] no further construction" in *C-Cation Techs., LLC v. Time Warner Cable, Inc.*, 2015 U.S. Dist. LEXIS 51241, *32 (E.D. Tex. Apr. 18, 2015). (*Id.*) According to Plaintiffs, Defendants' theory ignores the actual claim language and intrinsic record, and has been uniformly rejected by this Court and others. (*Id.* at 9.)

For the following reasons, the Court finds that the term **"suitable"** is not indefinite.

### b) Analysis

The term "suitable" appears in asserted claims 184 and 312 of the '938 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the claim language, "viewed in light of the specification . . . , inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129. For example, claim 184 recites "selecting from among a plurality of consumer entities those consumer entities suitable for receiving a particular type of financial product or service offering," and "communicating said communications to said selected consumer entities." Similarly, claim 312 recites "means for selecting from among a plurality of consumer entities those consumer entities suitable for receiving a particular type of financial product or service offering being offered as part of a mass marketing campaign," and "means for communicating said communications to said selected consumer entities." Thus, the claim language makes clear that a consumer entity is "suitable" when it is selected from among a plurality of consumer entities.

The intrinsic evidence further informs those skilled in the art about the scope of the term with reasonable certainty. For example, the specification of the '434 Patent states "applying decision making criteria to select from among those plans and products the ones most suitable for the client based on the decision making criteria." '434 Patent at 9:50–57. Similarly, the specification of the '938 Patent states that "a mass communication will have been made to clients regarding term life insurance . . . by delivery of a customized (or generic) term life insurance program (that may include several options suitable for the individual client) by any one of several appropriate delivery means." '938 Patent at 31:53–59. Finally, during prosecution of the '938 Patent, the patentee stated that "[o]ften, there are any number of factors to consider, such as the needs of the consumer, the suitability of a financial product or service for a given customer, the resources of the consumer, the types of financial products/services available, pertinent government regulations, etc." (Dkt. No. 458-6 at 3) (June 6, 2003 Response to Office Action in the '938 Patent file history). This intrinsic evidence indicates that the claims, viewed in light of the specification, inform those skilled in the art about the scope of the invention with reasonable certainty. Specifically, a consumer entity is "suitable" when it is selected from among a plurality of consumer entities. Accordingly, Defendants have failed to prove that the term is indefinite.

Defendants argue that the claims merely state that "suitable" consumer entities are selected, without providing any criteria for suitability. (Dkt. No. 458 at 12.) Defendants also contend that the specification fails to provide an objective standard or explanation that one of ordinary skill in the art could use to objectively determine the bounds of "suitable" in the claims. (*Id.* at 12–13.) The Court disagrees. Defendants ask the Court to ignore the use of the term "suitable" in the context of the intrinsic evidence, and instead interpret it in a vacuum as a word

of degree. *Energizer Holdings v. ITC*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ("Claim definiteness is analyzed 'not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.'") (quoting *In re Moore*, 58 C.C.P.A. 1042, 439 F.2d 1232, 1235 (CCPA 1971)). As Plaintiffs argue, nothing in the actual claim language requires the selected consumer entity to be more suitable than another consumer entity. Indeed, the intrinsic evidence indicates that multiple consumer entities are selected. The claim language plainly states "selecting from among a plurality of consumer entities those consumer entities suitable for receiving a particular type of financial product or service offering."

The intrinsic evidence further confirms the ordinary use of suitable by stating that the customized term life insurance program delivered to clients "may include several options suitable for the individual client) by any one of several appropriate delivery means." '938 Patent at 31:53–59. Thus, as explicitly recited in the claims, one can objectively establish that a consumer entity is "suitable" when it is selected from among a plurality of consumer entities. The claims do not require establishing a particular criteria as a hurdle for determining when a consumer entity is "suitable." *Intermec Techs. Corp. v. Palm Inc.*, 811 F. Supp. 2d 973, 996 (D. Del. 2011) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citing *In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir. 1983)). Accordingly, the Court finds that the claims, viewed in light of the specification, inform those skilled in the art about the scope of the invention with reasonable certainty.

### c) Court's Construction

In light of the intrinsic evidence, the Court finds that the term **"suitable"** is not indefinite.

### 3. "distinct choices" and "distinct choice selected"

| Disputed Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "distinct choices" | Plain meaning | two or more distinct options presented |
| "distinct choice selected" | Plain meaning | the chosen option of the presented options |

#### a) The Parties' Positions

The parties dispute whether the term "distinct choices" should be construed as "two or more distinct options presented," as Defendants contend. The parties also dispute whether the phrase "distinct choice selected" should be construed as "the chosen option of the presented options," as Defendants contend. Plaintiffs argue that there is no need to construe the terms. (Dkt. No. 465 at 9.) Defendants argue that their construction is mandated by the plain language of plural "choices" and the surrounding claim language. (Dkt. No. 458 at 16.) Defendants contend that the plain language of plural "distinct choices" confirms that what is claimed is presenting two or more options. (*Id.*)

Defendants further argue that the patentee submitted a declaration during the prosecution of the '184 Patent in which he described "distinct choices as indicated on the bottom of page 1 of Exhibit 2 (e.g., "Yes, I choose . . . ")." (*Id.* at 17) (quoting Dkt. 458-7 at 3 (Declaration Under 37 C.F.R. 1.131 from Richard Marc Libman and Exhibit 2 thereto in the '184 Patent file history)). Defendants argue that the "distinct choices" illustrated by the patentee are shown in policies A, B, and C, any of which may be chosen by the recipient of the communication. (*Id.*) (citing Dkt. No. 458-7 at Exhibit 2). Defendants further argue that Section 2 of the "sample form presentation" referred to at column 16, lines 43–47 of the '434 Patent presents two or more distinct options from which the recipient may choose. (*Id.* at 18) (citing '434 Patent at Appendix 1A). Defendants also contend that the specification states that "the system also provides for flexibility of responses from the clients, by permitting clients to select from a plurality of options

and requests for further information, each of which may be automatically analyzed and replied to through the system of the invention." (*Id.*) (quoting '938 Patent at 34:44–48).

Defendants further argue that it is unclear what Plaintiffs believe the plain and ordinary meaning is. (*Id.*) Defendants contend that Plaintiffs' citations to supporting intrinsic evidence in the Joint Claim Construction Chart include citations to embodiments that present just one option as well as embodiments that do not show any distinct choice selection. (*Id.* at 18–19.) Defendants argue neither situation is consistent with the plain claim language or the applicant's unequivocal statements to the PTO. (*Id.* at 19.)

Plaintiffs respond that the terms "distinct choices" and "distinct choice selected" are used in the claims according to their plain meaning. (Dkt. No. 465 at 9) (citing '184 Patent at 34:19–36 (claim 1)). Plaintiffs also argue that there is nothing in the intrinsic record that redefines these terms. (*Id.* at 10) (citing '114 Patent at 22:26–33, Figure 12). Plaintiffs further contend that the specification of the '434 Patent discloses "giv[ing] you the choice of selecting the particular type of coverage that best suits your individual needs." (*Id.*) (citing '434 Patent at Appendix 1A).

Regarding Defendants' construction, Plaintiffs argue that it replaces these easily understood non-technical terms with more verbose, potentially confusing phrases. (*Id.* at 11.) Plaintiffs contend that construing these terms is an unnecessary exercise in redundancy. (*Id.*) Plaintiffs argue that Defendants provide no basis for why the Court should write-out the simple term "choice," in favor of the term "option." (*Id.*) Plaintiffs argue that when the patentee intended to use the word "option," he did so expressly. (*Id.*) (citing '938 Patent at 36:23–24 (claim 18) ("replies includes one or more response options"); '744 Patent at 30:24–27 (claim 17) ("one or more communications delivery options")). Plaintiffs contend that nothing in the intrinsic record of claim construction principles supports changing the patentee's choice. (*Id.*)

For the following reasons, the Court finds that the terms **"distinct choices"** and **"distinct choice selected"** should be given their **plain and ordinary meaning.**

### b) Analysis

The term "distinct choices" appears in asserted claims 1 and 30 of the '184 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The term "distinct choice selected" appears in asserted claims 1 and 30 of the '184 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the terms do not require construction because they are unambiguous, and are easily understandable by a jury, and should be given their plain and ordinary meaning.

Claim 1 of the '184 recites "communication data outputs . . . comprising an offering for a particular type of product or service [that] contains *distinct choices* particular to the offering," and "receiving . . . responsive communications . . . indicating *a distinct choice selected by the certain clients*," '184 Patent at 34:19–36 (emphasis added). A review of the intrinsic evidence finds that these disputed terms are used in the claims according to their plain meaning and are easily understandable by a jury. The Court further finds that Defendants' construction is unwarranted and replaces these easily understood terms with potentially confusing phrases.

First, Defendants' construction replaces "choices" with "options." Defendants have not provided a persuasive reason for redrafting the language chosen by the patentee, with the language they prefer. Both the prosecution history and Appendix 1A of the '434 Patent cited by Defendants include the term "choices," not options. *See* Dkt. 458-7 at 3 (Declaration Under 37 C.F.R. 1.131 from Richard Marc Libman and Exhibit 2 thereto in the '184 Patent file history); '434 Patent at Appendix 1A. Moreover, Plaintiffs correctly argue that the claim language

indicates that when the patentee intended to use the word "option," he did so expressly. *See, e.g.,* '938 Patent at 36:23–24 (claim 18) ("replies includes one or more response options").

Likewise, Defendants' construction for "distinct choice selected" confuses the claim language when substituted back into the claims. Under Defendants' construction, the clear phrase of "indicating a distinct choice selected by the certain clients," becomes the less than clear phrase of "indicating a *the chosen option of the presented options* by the certain clients." Defendants contend that their construction is necessary because Plaintiffs have indicated that they will argue that "distinct choices" includes embodiments that present just one option and do not show any distinct choice selection. (Dkt. No. 458 at 18–19.) The Court agrees with Defendants that the plain language of plural "choices," as well as the adjective "distinct," requires more than just one choice. Accordingly, to resolve the parties' claim construction dispute, the Court finds that presenting a single binary "choice" is not "distinct choices." For example, presenting "yes" by itself, or together with "no," would not be "distinct choices." Likewise presenting "buy" by itself, or together with "decline," would not be "distinct choices." In both instances, the client is not presented with "distinct choices," but instead is presented with a single choice.

However, as Defendants agreed at the hearing, presenting "buy" along with some other choice would be "distinct choices." For example, Figure 21 in the '184 Patent illustrates "distinct choices" by including in block 2570 the "buy" and "more information," or "buy" and "other request." In this example, the client is presented with "distinct choices" because the client can either select "buy" or select "more information." Therefore, the Court rejects Plaintiffs' argument to the extent that they contend that "choices" includes a single choice. Other than this point of clarification, the Court finds that the terms should be given their plain and ordinary

meaning.

### c) Court's Construction

In light of the intrinsic evidence, the term **"distinct choices"** and **"distinct choice selected"** will be given their **plain and ordinary meaning** as understood by one of ordinary skill in the art.

### 4. "nonpurchase request"

| Disputed Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "nonpurchase request" | a request that does not communicate a purchase of the offered financial product(s) or service(s), such as a request for further information, a request for a modified product, a request for a different type of quotation, or the like | "a request indicating selection of a response option other than to purchase, or to apply for, the offered financial product(s) or service(s), such as a request for further information, a request for a modified product, a request for a different type of quotation, or the like" |

### a) The Parties' Positions

The parties agree on the exemplary list of "nonpurchase responses" included in the specification. The parties dispute: (1) whether applying for a product or service is equivalent to a purchase request, as Defendants contend; and (2) whether a nonpurchase request must "indicat[e] [a] selection of a response option," as Defendants contend. Regarding the first issue, Defendants contend that the claims and the specification confirm that applying for a financial product is a purchase request and, therefore, cannot be a nonpurchase request. (Dkt. No. 458 at 20.) Defendants argue that it is well known that for many banking products when a consumer desires to obtain a product, that final decision response is the consumer "applying" for the product. (*Id.*) Defendants argue that the specification describes an option that the consumer could select in reply to an "original communication" is "purchase (apply)." (*Id.*) (citing '938 Patent at 31:60–67). Defendants contend that this is presented along with nonpurchase options

such as "'need more information', 'need more information on option x', 'need additional quotation for (spouse, child, etc.).'" (*Id.*) (quoting '938 Patent at 31:60–67). According to Defendants, this indicates that "purchase" and "apply" are synonymous, and when the patent claims nonpurchase requests, such a term does not include the act of "purchase (apply)." (*Id.*)

Regarding the second issue, Defendants contend that the specification consistently uses "nonpurchase" to refer to a category of specific responses, not simply the absence of a purchase request. (*Id.*) Defendants argue that in defining "response," the specification explains that "[t]he response includes a selection of response options, for example, 'buy,' 'more information,' 'different amount,' etc.," and "[o]f particular interest are responses that select nonpurchase type options (i.e. ones that do not include an order to buy) because, as explained above, traditional mass marketing generally does not permit and generally does not cope with these types of responses." (*Id.* at 20–21) (quoting '938 Patent at 7:58–67). Defendants contend that this is consistent with the discussion of "nonpurchase response" in the "summary of the invention," which describes "a nonpurchase response" as "a request for further information, a request for a modified product, a request for a different type of quotation, and the like." (*Id.* at 21) (quoting '938 Patent at 3:9–12). According to Defendants, "nonpurchase" refers to a response indicating selection of an option other than purchase (apply). (*Id.*) Defendants contend that selection of an option is necessary so that the system can act upon the response to generate a reply. (*Id.*) (citing '938 Patent at 3:22–25).

Defendants further argue that Plaintiffs' construction of "a request that does not communicate a purchase" alters the plain language of the claim. (*Id.*) Defendants contend that rather than requiring a response that conveys a specific intent, Plaintiffs' construction would allow "a request that does not communicate a purchase." (*Id.*) According to Defendants, that is

not what the plain language of the claim requires nor is it consistent with the use of "nonpurchase" in the intrinsic record. (*Id.*)

Plaintiffs respond that the term "nonpurchase request" is not a complex term. (Dkt. No. 465 at 11.) Plaintiffs argue that the prefix "non" simply means "not," and the word "nonpurchase" therefore means "not a purchase." (*Id.*) According to Plaintiffs, a "nonpurchase request" is simply a request communicating something that is not a purchase, or, phrased differently, a "request that does not communicate a purchase." (*Id.*) Plaintiffs contend that the specification confirms this plain usage of the term. (*Id.*)

Regarding the first issue, Plaintiffs argue that applying and purchasing are not synonymous. (*Id.* at 12.) Plaintiffs contend that although one may apply for life insurance, to actually acquire the insurance, one must subsequently purchase it. (*Id.*) Plaintiffs further contend that in applying for the product or service, that person has purchased nothing. (*Id.*) Plaintiffs further argue that the claim language provides that a reply to a nonpurchase request is "generated prior to receipt from a consumer entity of a purchase commitment . . . ." (*Id.*) (quoting '938 Patent 35:5–13 (claim 1)). According to Plaintiffs, Defendants are conflating an application with a purchase. (*Id.*)

Regarding Defendants' argument that the patentee used "applying" and "purchasing" synonymously, Plaintiffs contend that the reference to "purchase (apply)" in the specification's description of Figure 19 is taken from an embodiment, and that the Court cannot import the limitation into the claims. (*Id.*) (citing *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005)). Plaintiffs further argue that the specification makes it clear that there may be "several (or unlimited) options for response," and "purchase (apply)" is simply one of such "unlimited" options identified in the particular life insurance "non-limiting illustrative

example" addressed in that portion of the specification. (*Id.*) (quoting '938 Patent at 31:50–63). Plaintiffs also argue that Figure 19 and the corresponding specification refer simply to a "purchase option." (*Id.*) According to Plaintiffs, a "purchase option" is merely an option that may ultimately lead to a "purchase request," after additional communications occur. (*Id.* at 13) (citing '938 Patent at 3:29–31).

Regarding the second issue, Plaintiffs argue that nothing in the actual claim language supports Defendants' attempt to require that the nonpurchase request "indicat[e] [a] selection of a response option . . . ." (*Id.*) Plaintiffs contend that not one of the independent claims of the '938 Patent makes any reference to "indicating selection of a response option," or any reference to the words "response option." (*Id.*) Plaintiffs further argue that the term "response option" only appears in the dependent claims. (*Id.*) According to Plaintiffs, this demonstrates that a nonpurchase request as used in the independent claims is not limited to a response option. (*Id.*) Finally, Plaintiffs argue that Defendants' construction is another attempt to inject a "selection of response option" limitation in the claims that the Court has already rejected. (*Id.*) (citing Dkt. No. 444 at 62–63).

For the following reasons, the Court finds that the term **"nonpurchase request"** should be construed to mean **"a request that does not include an order to buy or purchase the offered financial product(s) or service(s), such as a request for further information, a request for a modified product, a request for a different type of quotation, or the like."**

### b) Analysis

The term "nonpurchase request" appears in asserted claims 1, 52, 184, and 226 of the '938 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the specification provides an

exemplary list of nonpurchase requests. Specifically, the specification states that "[e]ach of the responses that includes a nonpurchase response i.e. a request for further information, a request for a modified product, a request for a different type of quotation, and the like." '938 at 3:9–12. The parties have included this exemplary list in their construction, and the Court agrees that it clarifies the term for the jury.

Regarding the first issue of whether a person of ordinary skill in the art would understand applying for a product or service to be a purchase request, the Court finds that they would not. In one exemplary embodiment, the specification does state that "[t]he original communication will have provided clients with several (or unlimited) options for response, for example, the range of responses may include 'purchase (apply)', 'need more information', 'need more information on option x', 'need additional quotation for (spouse, child, etc.)', and any other of a myriad of possible appropriate responses selected by the party initiating the mass communication." '938 Patent at 31:60–66. Defendants contend that this indicates that the patentee used "purchase" and "apply" synonymously. The Court disagrees.

As indicated in the specification, this is "non-limiting illustrative example," and even assuming that Defendants are correct for this particular embodiment, Defendants have not persuaded the Court that the claims should be limited to this exemplary embodiment. '938 Patent at 31:50–54. Indeed, in defining "response," the specification states that "[o]f particular interest are responses that select nonpurchase type options (i.e. ones that do not include an order to buy) because, as explained above, traditional mass marketing generally does not permit and generally does not cope with these types of responses." '938 Patent at 7:61–66. Here, the specification defines "nonpurchase" as one that does not include an order to buy. Likewise, the claim language itself recites that a reply to a nonpurchase request is "generated prior to receipt from a

consumer entity of a purchase commitment . . . ." '938 Patent 35:5–13 (claim 1)). Accordingly, the Court agrees with Plaintiffs that Defendants' construction conflates an application with a purchase.

Regarding the second issue, the Court is not persuaded that a nonpurchase request is "a request indicating selection of a response option," as Defendants propose. The Court finds that the independent claims of the '938 Patent do not make reference to "indicating selection of a response option," or recite the words "response option." In fact, the term "response options" only appears in the dependent claims. *See, e.g.*, '938 Patent at Claim 18 ("The method of claim 1, wherein each of said communications and replies includes one or more response options."). Moreover, the Court previously found that including a "selection of response option" would be limiting the claims to preferred embodiments. (Dkt. No. 444 at 62-63.) As discussed above, a nonpurchase request can include a request for further information, a request for a modified product, a request for a different type of quotation, or the like, and is not limited to "a request indicating selection of a response option."

### c) Court's Construction

In light of the intrinsic evidence, the Court construes the term **"nonpurchase request"** to mean **"a request that does not include an order to buy or purchase the offered financial product(s) or service(s), such as a request for further information, a request for a modified product, a request for a different type of quotation, or the like."**

5.  **"variable data," "variable content data," "personalized content," "customized specific content," "customized section," "information relating to an offering for one or more financial products or services," "plan information"**

| Disputed Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "variable data" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "variable content data" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "personalized content" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "customized specific content" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "customized section" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "information relating to an offering for one or more financial products or services" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |
| "plan information" | plain meaning | "content that is selected for a particular client using decision information and inserted at a predetermined location" |

### a) The Parties' Positions

The parties dispute whether the terms listed above should be construed the same as the term "variable information." Defendants contend that the various asserted patents use the terms listed above in the same way as "variable information" is used in the specification and claims. (Dkt. No. 458 at 21.) According to Defendants, these terms should be given the same construction Defendants proposed for "variable information" for the same reasons explained in Defendants' original *Markman* Brief. (*Id.*)

In their original brief, Defendants argued that the '744 Patent further describes that "[t]he method and apparatus according to the invention" can "prepare personalized and individualized communications specifically tailored for each individual prospect to effectively communicate the

information to the client or prospective client that he or she needs to make an informed buying decision . . . ." (Dkt. No. 411 at 27) (quoting '744 Patent at 3:19–36). Defendants also argued that the terms "information relating to an offering for one or more financial products or services" and "plan information," are synonymous with "variable information." (*Id.*) Defendants contend that claim 1 of the '632 Patent recites "generating" "communications" containing "plan information," which is the same context in which "variable information" is used in the specification. (*Id.*) (citing '632 Patent at 22:26–29 ("The generating step includes inserting the variable information or a subset of the variable information for a given client into the variable portion of the client communication for that client.")).

Plaintiffs respond that Defendants only argue that each of "these terms should be given the same construction as Defendants proposed for 'variable information' for the same reasons explained in Defendants' original *Markman* Brief." (Dkt. No. 465 at 13) (quoting Dkt. No. 458 at 18). Plaintiffs contend that the Court has already rejected each of those reasons in its first *Markman* Order. (*Id.* at 13–14) (citing Dkt. No. 444 at 53–55). Plaintiffs further argue that Defendants have presented nothing in their supplemental brief that would support a different conclusion. (*Id.* at 14.)

Plaintiffs further argue that Defendants' construction for these terms is less tenable than the position they took for the term "variable information" during the first *Markman* proceedings. (*Id.*) Plaintiffs contend that the only evidence Defendants cite in support of their "inserted at a predetermined location" requirement is a single sentence from the '744 Patent. (*Id.*) Plaintiffs argue that the sentence was in the context of "the client communication," not "plan information" or "personalized content," or any of the terms Defendants' now propose for construction. (*Id.*) Plaintiffs further argue that the Court already held, "where the 'variable information' is inserted

is a characteristic of the client communication, and not the 'variable information.'" (*Id.*) (quoting Dkt. No. 444 at 54).

For the following reasons, the Court finds that the terms/phrases **"variable data," "variable content data," "personalized content," "customized specific content," "customized section," "information relating to an offering for one or more financial products or services,"** and **"plan information"** should be given their **plain and ordinary meaning.**

### b) Analysis

The term "variable data" appears in asserted claims 1 and 87 of the '375 Patent; and asserted claims 1, 4, 17, 30, and 36 of the '184 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "variable data" is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 1 of the '375 Patent recites that "at least some content . . . is customized content generated by said computing system for said electronic document file which includes variable data." Dependent claim 14 further recites that the "variable data further includes pricing information that is varied between consumer entities based on performing calculations pertinent to said consumer entities." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "variable data" is data that may vary.

The term "variable content data" appears in asserted claims 17, 23, 24, and 25 of the '114 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "variable content data" is unambiguous, is easily understandable by a jury, and requires no construction. For example,

claim 17 of the '114 Patent recites that "at least one of the sections of the client communication contains variable content data." Dependent claim 8 further recites that the "variable content data is variable client information data." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "variable content data" is content data that may vary.

The term "personalized content" appears in asserted claims 1, 8, 12, 18, 21, 28, 39, and 113 of the '366 Patent; and asserted claims 1, 4, 10, 15, 16, 29, and 30 of the '435 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "personalized content" is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 1 of the '366 Patent recites "a separate personalized section adapted to present at least some personalized content relating to an offering for said consumer entity of said first financial product and/or financial service." Dependent claim 2 further recites that the "personalized content presented in said personalized section includes at least some personal data associated with such consumer entity." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "personalized content" is content that may vary.

The term "customized specific content" appears in asserted claims 60 and 70 of the '366 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "customized specific content" is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 60 of the '366 Patent recites that the "customized communication comprising customized specific content for said consumer entity relating to an offering for one or more financial products and/or financial service." Dependent claim 74 further recites that the

"customized specific content further includes pricing information that is varied between consumer entities." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "customized specific content" is content that may vary.

The term "customized section" appears in asserted claims 37 and 123 of the '375 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "customized section" is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 37 of the '375 Patent recites that the "customized communication includes . . . a separate customized section adapted to present at least some customized content." Dependent claim 44 further recites that the "customized content presented in said separate customized section includes at least some personal data associated with such consumer entity." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "customized section" is a section in the customized communication that presents content that may vary.

The phrase "information relating to an offering for one or more financial products or services" appears in asserted claim 52 of the '938 Patent; and asserted claims 1, 80, and 87 of the '375 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the phrase is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 52 of the '938 Patent recites "automatically preparing a mass marketing customized communication for each consumer entity, said communication comprising information relating to an offering for one or more financial products or services being offered as part of a mass marketing campaign." This claim language is unambiguous and easily understandable by a jury.

The term "plan information" appears in asserted claims 1, 3, 4, 7, 17, 22, 27, 28, and 31 of the '632 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the term "plan information" is unambiguous, is easily understandable by a jury, and requires no construction. For example, claim 17 of the '632 Patent recites that the "a computer having at least one module programmed to automatically: (i) generate plan information for each person of a set of persons, wherein: (A) the plan information generated for some of the persons concerns different plan features than plan information generated for other plans of the persons." Accordingly, the Court finds that the claim language is consistent with the plain and ordinary meaning that "plan information" is information that may vary.

Finally, the Court's April 18, 2015 Order stated that it was not convinced that all of the terms listed above should be construed the same as Defendants proposed. (Dkt. No. 444 at 50 n.4.) The Order further stated that "[t]o the extent that one or more of these terms require construction, the parties are directed to the procedure stated in the Court's Order Regarding Claim Construction Briefing Schedule (Dkt. No. 403.)" (*Id.*) Defendants' supplement brief only referred the Court back to their original *Markman* brief. (Dkt. No. 458 at 21.) The Court addressed Defendants' arguments in the April 18, 2015 Order as they relate to the term "variable information." In light of Defendants' conclusory argument that "various asserted patents use the terms listed above in the same way as 'variable information' is used in the specification and claims," the Court finds that its analysis for the term "variable information" applies equally to the terms listed above. Specifically, the Court finds that "selecting" and "inserting" are not characteristics of the terms listed above, but instead are unwarranted limitations.

The sentence that Defendants quote from the '744 Patent does not change the conclusion

that the plain and ordinary meaning of "variable information" indicates that it is information that varies. (Dkt. No. 411 at 26–27) Likewise, Defendants' argument that "information relating to an offering for one or more financial products or services" and "plan information" are synonymous with "variable information" indicates that the Court's previous analysis applies equally to the disputed terms. In summary, the Court finds that the terms/phrases listed above are unambiguous, are easily understandable by a jury, and require no construction.

### c) Court's Construction

In light of the intrinsic evidence, the terms/phrases **"variable data," "variable content data," "personalized content," "customized specific content," "customized section," "information relating to an offering for one or more financial products or services,"** and **"plan information"** will be given their **plain and ordinary meaning.**

## IV. CONCLUSION

The Court adopts the above constructions. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 21st day of June, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE